11264

### HUBBARD v. WOODMEN OF THE WORLD

(118 S. E. 418)

INSURANCE—No ACTION FOR WRONGFUL CANCELLATION; INSURED BEING
IN DEFAULT IN PAYING ASSESSMENTS.—Where an insured's assessments on his fraternal benefit policy had not been paid for any
month of the year 1922, and on April 22, 1922, the Sovereign Camp
wrote him that his policy had not been in force since August 1, 1920,
on account of the local clerk's delinquency in transmitting to the
Sovereign Camp assessments collected, *held*, that insured could not
maintain an action for a wrongful cancellation of his policy.

Before N. G. EVANS, SPECIAL JUDGE, Barnwell, Fall
Term, 1922. Reversed.

Action by W. R. Hubbard against the Woodmen of the
World. Judgment for plaintiff and defendant appeals.

*Messrs. Holman & Boulware,* for appellant, cite: *Suspension of Camp suspended members:* 110 S. C., 337.

*Messrs. James E. Davis, G. Duncan Bellinger* and *John
W. Crews,* for respondent, cite: *Clerk of local Camp is
agent of Sovereign Camp:* 1 Civ. Code 1912, Sec. 2770;
102 S. C., 386; 116 S. C., 360; 110 S. C., 402.

July 9, 1923.

The opinion of the Court was delivered by MR. JUSTICE
MARION.

The respondent, W. R. Hubbard, as a member of Gopher
Hill Camp 189, South Carolina, Woodmen of the World,
was issued a certificate of life insurance for $1,000.00,
dated October 8, 1912, payable to Lila I. Hubbard, beneficiary. This was a "combined benefit certificate," providing,
among other things, that the constitution and laws of the
defendant society and all amendments thereof, together with
the certificate, should constitute the agreement betwen the
society and the insured. The laws of the society provided
that every member to whom a combined benefit certificate

was issued prior to January 1, 1920, should thereafter pay
to the Sovereign Clerk "an annual assessment in advance"
at prescribed rates or "in lieu of the annual assessment the
monthly installment, as set forth" in the table of rates.

On November 30, 1922 (1921?), the respondent paid
his dues in advance to G. W. Long, Clerk of Gopher Hill
Camp, the payment of which, as he contends, continued
him in good standing until January 1, 1922. Thereafter
respondent received a letter from Sovereign Camp, dated
April 28, 1922, to the following effect: That the records
of the Sovereign Camp showed that respondent's local Camp
had been suspended August 1, 1920, for the nonpayment
of installment 7, no remittance having been thereafter made
by the Clerk on account of the membership of the Camp;
that it had been called to the attention of the Sovereign
Camp that some of the members of respondent's Camp
were then paying their dues to the former Clerk of the
local Camp; that such Clerk no longer had authority to
make collection of the dues; that if respondent had been
making payment to the former Clerk or to any one else, he
was requested to forward the receipts to the office of the
Sovereign Camp in order that they might have sufficient
information to make the proper corrections on his account;
that payments to any one representing himself as Clerk of
the local Camp should be discontinued; but that, until ar-
rangements could be made for transferring respondent's
membership, he might make his remittances directly to the
Sovereign Commander. The receipt of the foregoing letter
of April 28, 1922, was the first intimation that respondent
had that he and the local Camp had been suspended on the
records of the Sovereign Camp. Respondent had received
a communication under date of February 6, 1922, from
which he inferred he was still in good standing. In reply
to the Sovereign Camp's letter of April 28, 1922, respond-
ent on May 4, 1922, forwarded by mail to the Sovereign
Camp the sum of $14.00, which amount, together with the

sum of 7.00, claimed to be due him as a refund, respondent tenderd as payment of his dues to June 1, 1922. In this letter respondent inclosed a copy of the receipt of the local Clerk, dated November 30, 1922 (1921?), purporting to cover dues of respondent up to January 1, 1922. The amount so tendered by respondent was returned on May 9, 1922, by the Sovereign Camp, with instructions that if respondent would forward his original receipts from the Clerk of the local Camp, the Sovereign Camp would then be in position to make the proper adjustment, and the matter would be given immediate attention. Respondent thereupon commenced this action.

This action is to recover damages for a fraudulent breach of contract, alleged to consist in the wrongful repudiation and cancellation by the defendant society of the plaintiff's benefit certificate or contract of insurance. The doctrine, apparently, under which a recovery is sought, is thus clearly stated by Mr. Justice Pitney in *O'Neill v. Supreme Council,* 70 N. J. Law, 410; 57 Atl., 463; 1 Ann. Cas., 422:

"* * * Where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance, and maintain an action at once for the damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant."

The complaint, as we understand it, proceeds upon the theory that the action of the Sovereign Camp in declaring under date of April 28, 1922, that the local Camp, of which plaintiff was a member, had been suspended from August 1, 1920, and that, "according to the records of the Sover-

eign Camp," his insurance had not been in force since the payment of installment 6, in 1920, entitled the plaintiff to hold the defendant for a breach of contract as of date August 1, 1920. The contention is that the attempted suspension on August 1, 1920, was a wrongful repudiation of the contract, and that the plaintiff was not then in default and could not be charged with delinquency on account of the failure of the local Clerk to remit dues to the Sovereign Camp, for the reason that, with respect to such transmission of funds, the local Clerk was the agent, not of the plaintiff, but of the Sovereign Camp, under the decisions of this Court in *Crumley v. Sovereign Camp, W. O. W.,* 102 S. C., 386; 86 S. E., 954. *Watson v. Sovereign Camp, W. O. W.,* 116 S. C., 360; 108 S. E., 145, and *Weathers v. Sovereign Camp, W. O. W.,* 119 S. C., 402; 112 S. E., 44. Hence, plaintiff says, under the Sovereign Camp's declaration of April 28, 1922, that his contract had not been in force since August 1, 1920, he had a right to elect to take the Sovereign Camp at its word and treat the contract as at an end on August 1, 1920, and thereupon sue for a breach as of that date.

Assuming, for the purposes of this discussion, that plaintiff's position is tenable in so far as it involves the two contentions: (1) That plaintiff was not bound by the failure of the local Clerk to transmit to the Sovereign Camp dues paid in by members of the local Camp and by the suspension of the local Camp consequent upon the Clerk's default; and (2) that the communications of April 22, 1922, and May 9, 1922, were, in fact, such a definite renunciation or repudiation of the contract by the Sovereign Camp, as would entitle the plaintiff to maintain an action of this character, the vital question remains as to whether, at the time of the commencement of his action, the plaintiff could treat the contract as terminated on August 1, 1920, or was bound to stand upon the contract as of the date of its alleged repudiation by the society on April 22, 1922. The

question is raised by appellant's first exception which assigns error in the refusal of the trial Judge to direct a verdict for the defendant upon the ground that on the date of the alleged renunciation by the society the plaintiff, upon his own showing, had failed to comply with the conditions of his contract by paying in advance his dues for January, February, March, and April, 1922, to the local Clerk or to any one else.

The action on the part of the defendant society which gave rise to the plaintiff's right to rescind or to treat the contract as at an end was the alleged wrongful repudiation, or announcement of an intention not to fulfill, by the defendant under date of April 22, 1922. According to plaintiff's contention, the failure of the local Clerk to remit dues to the Sovereign Camp did not terminate or suspend the contract and, in any view, it was within the power of the Sovereign Camp to waive such a cause of forfeiture. If so, the plaintiff sustained no injury and suffered no actionable wrong until the defendant announced the suspension of the contract and thus, as he contends, signified an intention to repudiate in advance the society's contractual obligations. The alleged wrongful marking of the plaintiff's contract as suspended on the records of the Sovereign Camp, August 1, 1920, could not have misled the plaintiff or in any way have prejudiced him, since he knew nothing of that fact until he received the defendant's letter of April 22, 1922. The very nature of plaintiff's right to avail himself of a repudiation on the defendant's part, to treat the contract as at an end, to lay down the burden of further performance on his part, and to seek compensation in damages, presupposes the existence of a valid contract, fully complied with and enforceable by him, at the time of the alleged wrongful renunciation by the defendant society. *Hochester v. De La Tour*, 2 El. & Bl., 678; 6 Eng. Rul. Cas., 576. *O'Neill v. Supreme Council, supra.* If at the time of the alleged repudiation by the defendant, the contract was in point of

fact dead, it is immaterial whether it had expired or become unenforceable on August 1, 1920, or on February 1, 1922, or whether its loss of potency was due to the failure of the local Clerk to transmit money to the Sovereign Camp or to the plaintiff's subsequent failure to pay assessments. It would seem clear that the announcement by the Sovereign Camp under date of April 22, 1922, that the contract had or whether its loss of potency was due to the failure of the local Clerk's delinquency even if based on an erroneous conception of the situation, could not operate to restore the contract to full force and vigor if, prior to April 22, 1922, it had become defunct by reason of plaintiff's failure to comply with conditions precedent. Unless, therefore, there was a valid subsisting contract which had been fully lived up to by plaintiff, at the time of the alleged repudiation by the defendant, no foundation exists for a recovery of damages by the plaintiff on the theory that the defendant placed its repudiation of the contract upon an untenable ground. If there was no enforceable contract, plaintiff could not have been injured by a repudiation, upon any ground, of an obligation that did not exist.

It follows that if at the time of the alleged renunciation by the defendant society (April 22, or May 9, 1922), the plaintiff's contract was defunct, or in a state of suspended potency, and could not have been enforced by plaintiff or on his behalf as a result of his failure to pay assessments due, he was not entitled to recover in this form of action, and defendant's motion for the direction of a verdict should have been granted. On May 4, 1922, plaintiff by letter tendered to the Sovereign Camp a certain amount in payment of his dues from January 1, 1922, to June 1, 1922. It is not contended, or even suggested, that the dues for January, February, March, and April, 1922, had theretofore been paid or tendered by plaintiff to the Clerk or other officer of the local Camp or to the Sovereign Camp. On April 22, 1922, the plaintiff by his own admission was in arrears for the dues

payable in advance for the months named. The effect of such delinquency under the plain provisions of the laws of the society, constituting a part of the contract, was to suspend plaintiff's membership and render his contract unenforceable until there had been a reinstatement in due course. If the society's letters of February, April, and May, 1922, were sufficient to support an inference of waiver—that is, of an intention on the part of the society to relinquish the right to avoid the policy for any cause then existing—then there was no repudiation of the contract. The contentions as to waiver and repudiation are incompatible. Clearly the plaintiff could not accept the benefit of an alleged waiver for the purpose of putting the contract in force and at the same time attribute to the waiver the force and effect of a renunciation by the defendant which would entitle him to treat the contract as ended and to recover damages for its wrongful repudiation. We, therefore, see no escape from the conclusion in any view that the defendant's motion for a directed verdict should have been granted upon the ground assigned.

We are constrained to sustain the appellant's first exception; a conclusion which renders unnecessary a consideration of the remaining exceptions.

The judgment of the Circuit Court is reversed, and the cause remanded for the entry of the appropriate judgment under Rule 27 of this Court.

Reversed.