THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 C. S. E. Enterprises,
 Inc., d/b/a/ RE/MAX at the Coast and Tom Naomi, Appellants,
 
 
 
 
 

v.

 
 
 
 
 Scott L. Lemons
 and Gold Coast Resorts, LLC, Respondents.
 
 
 
 
 

Appeal From Horry County
Ralph P. Stroman, Master-in-Equity

Unpublished Opinion No. 2011-UP-266    
 Heard December 9, 2010  Filed June 7,
2011

AFFIRMED AS MODIFIED

 
 
 
 Philip Coleman Thompson, of Conway, for
 Appellants.
 Thomas C. Brittain, Mary Madison B.
 Langway, and Andrew Preston Brittain, all of Myrtle Beach, for Respondents.
 
 
 

PER CURIAM: C.S.E.
 Enterprises, Inc., d/b/a RE/MAX at the Coast and Tom Naomi (collectively Naomi)
 appeal the order of the interim master holding Naomi was not entitled to a real
 estate commission.  We affirm.  
FACTS/PROCEDURAL HISTORY
Scott Lemons secured an
 option to purchase a fifteen-acre tract of waterfront property from John
 Delduco.  Although Lemons was a realtor, he contacted Naomi, a real estate agent
 for RE/MAX at the Coast, about marketing the property.  On September 27, 2006,
 Lemons and Naomi executed a listing agreement which provided Lemons would pay Naomi
 a commission of ten percent of the gross selling price if Naomi procured "a
 party ready, willing and able" to purchase the property.  The next day the
 parties executed a similar agreement, which provided a more detailed description
 of the property and set the selling price as $3,400,000.  
In October, a potential
 purchaser, Kenny Hyatt, contacted Naomi about the property.  Hyatt executed a
 buyer agency contract and a dual agency agreement with Naomi on October 28,
 2006.  He then made an offer on the property for $2,900,000, which Lemons
 accepted that same day.  When Lemons signed the purchase agreement, he also
 hand-wrote and signed an agreement, which provided:  "I Scott Lemons agree
 to pay RE/MAX at the Coast (Ref. Tom Naomi) a 10% commission upon close of the
 referenced prop. on the waterway approx. 15 ac. with contract for/with Kenny
 Hyatt."  The purchase agreement contained no contingencies and provided
 for a closing date of November 23, 2006.  
Hyatt had intended to
 immediately resell (flip) the property.  When he was unable to find a buyer, he
 refused to close on the property.  Because Hyatt refused to close, Lemons did
 not exercise his option to purchase the property.  On December 19, 2006, Naomi
 brought this action against Lemons and his company, Gold Coast Resorts, LLC,
 seeking payment of $290,000 as the real estate commission.  Lemons filed a
 third-party complaint against Hyatt for breach of contract and specific
 performance.  The action was referred to the master-in-equity, the Honorable J.
 Stanton Cross.  Prior to trial, Hyatt settled with Lemons for $5,000 and with
 Naomi for $20,000.  
Judge Cross found Hyatt's
 testimony established that he had no intention of consummating the transaction
 unless he could flip the property, did not have the wherewithal to consummate
 the transaction, and never sought financing for the property.  He found this
 conduct violated the covenant of good faith and fair dealing and displayed a
 volitional unwillingness to meet his contractual obligations.  However, Judge
 Cross held volitional unwillingness was not a ground for cancellation or a
 defense in a breach of contract action.  Thus, he concluded Naomi had fully
 performed the requirements of the real estate commission agreement and earned
 the commission when he procured Hyatt as a purchaser who was accepted by Lemons
 and who entered into a valid and enforceable contract with Lemons.  He granted
 Naomi a judgment for $270,000, allowing for a set-off for the settlement paid
 by Hyatt.  
Lemons timely filed a motion
 to alter or amend.  Due to the illness of Judge Cross, the motion was heard by
 the interim master-in-equity, the Honorable Ralph P. Stroman.  Judge Stroman
 found Hyatt's fraudulent misrepresentation to the parties made the original
 purchase agreement null and void.  Thus, he concluded Hyatt was never a
 legitimate buyer and no duty to pay a commission resulted.  This appeal
 followed.  
STANDARD OF REVIEW
"An action for a broker's
 commission is an action at law."  Springs & Davenport, Inc. v. AAG,
 Inc., 385 S.C. 320, 325, 683 S.E.2d 814, 816 (Ct. App. 2009).  In a law
 action tried before a master, this court's review is limited to the correction
 of errors of law, and the findings of fact of the master will not be disturbed
 upon appeal unless found to be without evidence that reasonably supports the
 master's findings.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C.
 81, 85-86, 221 S.E.2d 773, 775 (1976).  "Where mixed questions of fact and
 law are presented, the legal conclusions to be drawn are not entitled to the
 same deference."  Springs & Davenport, Inc., 385 S.C. at 325,
 683 S.E.2d at 816.
LAW/ANALYSIS
I. Interim Master's
 Authority
Naomi argues the interim
 master erred in granting Lemons' motion to alter or amend and reversing Judge
 Cross without reviewing the trial transcript or recalling witnesses.  Naomi
 never objected to Judge Stroman making his own findings of fact or conclusions
 of law on the motion to alter or amend, never requested Judge Stroman recall
 witnesses, and never questioned whether Judge Stroman had reviewed the
 transcript.  Accordingly, this argument is not preserved.  See Wilder
 Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is
 axiomatic that an issue cannot be raised for the first time on appeal, but must
 have been raised to and ruled upon by the trial judge to be preserved for
 appellate review."); see also State v. Oxner, 391 S.C. 132,
 134, 705 S.E.2d 51, 52 (2011) ("Even though subject matter jurisdiction
 may be raised at any time, there is no error preservation exception allowing a
 party to bypass calling an erroneous ruling to the attention of the tribunal
 making it before appealing that ruling to a higher court.").
II.  Commission
Naomi argues the interim
 master erred in finding Naomi had not earned his commission.  We disagree.  
"As a general rule, a
 broker has earned his commission when . . . he procures a purchaser who is
 accepted by the owner of the property and with whom the latter, uninfluenced by
 any representation of fraud on the part of the broker, enters into a valid and
 enforceable contract."  Cass Co. v. Nannarello, 274 S.C. 326, 328,
 262 S.E.2d 924, 926 (1980).  "[S]uch right to compensation will not be
 defeated by the failure or refusal of the purchaser to consummate the contract."  Id.  However, the broker and owner may set their own terms in the
 contract for the broker's services and "may make the payment of the broker's
 commission dependent upon the full performance of the contract of purchase or
 sale, or postpone the payment of the commission, or make the broker's right to
 the commission contingent upon the happening of future events."  Hamrick
 v. Cooper River Lumber Co., 223 S.C. 119, 124, 74 S.E.2d 575, 577 (1953).  "Where
 the obligation of the principal to pay commissions depends upon the performance
 of conditions precedent, the broker takes the risk of nonperformance on the
 part of the customer."  Id.

 Each of
 the words "ready," "willing," and "able"
 expresses an idea that the others do not convey.  All three of these elements
 must exist in the customer, in order to entitle the broker to a commission.  It
 is not sufficient that the customer is ready and willing, but he or she must
 also have the ability to carry out the loan, sale, purchase, or exchange.  So
 also, the procurement of a ready, willing, and able purchaser by a broker
 involves not only a showing that the purchaser has the financial ability to
 complete the contract, but also that the purchaser is ready and willing to
 purchase at a price and on terms prescribed by the vendor.

The Huffines Co., LLC v.
 Lockhart, 365 S.C. 178, 191-92, 617 S.E.2d
 125, 131-32 (Ct. App. 2005) (quoting 12 C.J.S. Brokers § 225 (2004)
 (footnotes omitted by court)).
Judge Stroman held Hyatt was
 not a buyer as contemplated by the parties' agreement and thus no commission
 was earned.  The first two listing agreements provided Naomi earned the
 commission when he procured a "ready, willing, and able" purchaser.  However,
 the handwritten agreement did not include such a provision.  

 Where
 instruments entered into by the same parties at different times relate to the
 same subject matter, the instruments will be construed together to determine
 the entire agreement between the parties. If the provisions of one instrument
 limit, explain, or otherwise affect the provisions of the other, they will be
 given effect to accomplish the entire agreement between the parties. 

Bishop Realty &
 Rentals, Inc. v. Perk, Inc., 292 S.C.
 182, 184-85, 355 S.E.2d 298, 300 (Ct. App. 1987) (citations omitted).
Although the handwritten
 agreement did not include the "ready, willing, and able" language, we
 find that in construing all of the instruments together, Naomi was required to
 procure a "ready, willing, and able" purchaser to earn the
 commission.  We further find Hyatt did not meet this description.
Naomi testified he believed
 Hyatt had the financial means to close the transaction because according to the
 tax records, Hyatt owned many other properties, including ones on the
 waterway.  However, the record contains no evidence that Hyatt had $2,900,000
 available on the date of the closing.  Hyatt testified that when he entered
 into the sales contract, he did not have the financial ability to close on the
 property.  He stated he could not close on the property without being able to
 flip it to another buyer and never found a buyer.  He explained he believed he
 would only lose his $10,000 earnest money by defaulting on the contract.  
We find Hyatt was not ready,
 willing, or able to purchase the property.  Thus, Naomi did not procure a
 ready, willing, and able buyer and did not earn a commission.  
Naomi's counsel stated at
 oral argument Lemons had admitted Hyatt was a ready, willing, and able buyer in
 his answer.  In his complaint Naomi alleged: "On or about October 28,
 2006, the Plaintiff procured a buyer, Kenny Hyatt, as a party ready, willing
 and able to purchase the property . . . ."  Lemons admitted this
 allegation in his answer.  Naomi never asserted at trial Lemons was bound by
 the admission in the answer and the issue of whether Hyatt was a ready, willing,
 and able buyer was contested at trial.  We find Naomi's argument concerning the
 admission in Lemons' answer is not properly before this court and furthermore, the
 issue of whether Hyatt was in fact a ready, willing, and able buyer was tried
 by consent.  See Wilder Corp., 330 S.C. at 76, 497 S.E.2d at 733 ("It
 is axiomatic that an issue cannot be raised for the first time on appeal, but
 must have been raised to and ruled upon by the trial judge to be preserved for
 appellate review."); McCurry v. Keith, 325 S.C. 441, 447, 481
 S.E.2d 166, 169 (Ct. App. 1997) ("When issues not raised in the pleadings
 are tried by consent, they will be treated as if they had been raised in the
 pleadings.").
Naomi's counsel also asserted
 at oral argument Lemons's counsel acknowledged at the hearing before Judge
 Stroman that Lemons believed Hyatt was a ready, willing, and able buyer.  In
 our review of the hearing, we find Lemons's counsel did not concede Hyatt was a
 ready, willing, and able buyer.  Instead, he was explaining Lemons's belief at
 the time Lemons entered into the handwritten agreement.  Lemons' counsel clearly
 argued at the hearing that Hyatt did not fit the definition of a ready, willing,
 and able buyer.  Thus, we find no merit to this argument.  
III.  Consideration of
 Settlement with Hyatt
Naomi argues the interim
 master erred in considering the partial settlement between the parties.  Hyatt
 settled with Lemons for $5,000 and with Naomi for $20,000.  Judge Cross's order
 mentioned the settlement in allowing for a set-off from his award to Naomi.  
Naomi
 failed to raise this issue to Judge Stroman.  Accordingly, it is not
 preserved.  Wilder Corp., 330 S.C. at 76, 497 S.E.2d at 733 ("It is
 axiomatic that an issue cannot be raised for the first time on appeal, but must
 have been raised to and ruled upon by the trial judge to be preserved for
 appellate review.").
IV.  Gold Coast as a Party
Naomi argues the interim
 master erred in finding that Gold Coast Resorts, LLC, had been dismissed from
 the case.  In listing the attorneys who represented the parties at the hearing
 on the motion to alter or amend, Judge Stroman noted:  "Gold Coast
 Resorts, LLC, had been dismissed earlier."  In his brief, Lemons
 acknowledges that Gold Coast Resorts, LLC, is still a party to the action. 
 Accordingly, the master's order is modified to reflect Gold Coast Resorts, LLC,
 is still a party to the action.  
CONCLUSION
We hold Judge
 Stroman correctly found Naomi was not entitled to the real estate commission. 
 However, we find Judge Stroman erred in noting Gold Coast Resorts, LLC, had
 been dismissed from the action.  Accordingly, the order of Judge Stroman is 
AFFIRMED AS
 MODIFIED.
HUFF,
 KONDUROS, and LOCKEMY, JJ., concur.